## In re SMITH.

(District Court, W. D. Texas, El Paso Division. October 2, 1899.)

### No. 7.

BANKRUPTCY—EXEMPTIONS—"WEARING APPAREL."

Where the state statute (Rev. St. Tex. art. 2397) exempts from execution all "wearing apparel" of the debtor, a bankrupt is entitled to claim as exempt a diamond stud, worth $250, habitually worn by him, during several years past, in the front of his shirt, and for the purpose of fastening the shirt together, when there are no circumstances connected with its acquisition or use tending to show fraud or bad faith towards his creditors.

In Bankruptcy. On question certified by referee in bankruptcy.

Frank E. Hunter, for bankrupt.

Z. B. Clardy, for contesting creditor.

MAXEY, District Judge. When this cause was first submitted to the court upon the certificate of the referee, it was returned for further proceedings. 93 Fed. 791. The errors of procedure having been corrected, the referee certifies the following question: "Is a diamond of the value of two or three hundred dollars, which is set as a shirt stud, and is habitually worn as such, exempt to a bankrupt, under the statute of Texas, which exempts all wearing apparel?" The trustee valued the diamond at $250, and set it apart to the bankrupt as exempt property. The referee, on the other hand, held that it constituted a part of the bankrupt's estate for distribution among his creditors. When Smith filed his petition in bankruptcy, he was a saloon keeper at El Paso, and the diamond was bought by him in 1888. The additional facts pertinent to the question submitted are embodied in the following written stipulation of counsel:

"Philip Smith, at the time he filed his petition in bankruptcy, was not a constituent of a family, and he has not been since then, and is not now, a constituent of a family. The diamond stud in question is a shirt stud, and is used by said Smith, and has been continuously worn by him in the front of his shirt, for the purpose of fastening his shirt together. The said Smith, for the past twelve or fifteen years, has not had or worn any shirts except those which open in front."

The decisions upon the question of exempting jewelry from forced sale are conflicting, and each case must depend upon its own peculiar circumstances, considered in connection with the statute to be construed. In re Steele, 22 Fed. Cas. 1202 (No. 13,346); Montague v. Richardson, 24 Conn. 338. The Texas statute, which controls the decision of this case, reserves "to persons who are not constituents of a family, exempt from attachment, execution and every other species of forced sale; * * * all wearing apparel." Rev. St. art. 2397. The statutes of some of the states exempt only necessary or proper wearing apparel, or wearing apparel not exceeding in value a named amount, or some similar modifying word or expression is used to limit the exemption. But the phraseology of the Texas statute is as comprehensive as language can make it, and, as has been seen, exempts from forced sale all wearing apparel. In this connection, it may be remarked that the exemption laws of this state are liberally construed in favor of the person claiming the exemption. Alsup v. Jordan, 69 Tex. 300, 6 S. W. 831; Green v. Raymond, 58 Tex. 80; Betz v. Maier, 12 Tex. Civ. App. 219, 33 S. W. 710. In the case last cited it is said by Chief Justice Fisher, at page 221, 12 Tex. Civ. App., and page 711, 33 S. W., that:

"These liberal views may be further pursued in other cases, notably St. Louis Foundry v. International Live Stock, Printing & Publishing Co., 74 Tex. 651, 12 S. W. 842, where it is held that the press, type, and material belonging to a firm of printers is exempt as the tools and apparatus belonging to a trade and profession, and that such exemption may be claimed by one of the individual members of the firm. A jack is exempt under the provision exempting two horses. Robinson v. Robertson, 2 Willson, Civ. Cas. Ct. App. § 251. And in Allison v. Brookshire, 38 Tex. 200, the word 'horses' in effect is held to be a generic term, and under the statute exempting two horses it was construed to embrace a mule. In Rodgers v. Ferguson, 32 Tex. 533, drays and carts are held to be included within the term 'wagon' when used in the exemption statutes. In Cobbs v. Coleman, 14 Tex. 596, an exemption of a horse is held to extend to things that would make his use beneficial, and therefore a saddle, bridle, etc., are exempt. Dearborn v. Phillips, 21 Tex. 451, decided that the exemption of a horse would include a rope. In Cone v. Lewis, 64 Tex. 333, it is held that an exemption of a wagon will include a dray; and the court there say: 'To a person pursuing the business of a drayman, such an exemption would seem particularly appropriate, and in harmony with the spirit of the statute which exempts all implements of husbandry, and all tools, apparatus, and books belonging to any trade or profession.' In Alsup v. Jordan, 69 Tex. 300, 6 S. W. 831, under the term 'household and kitchen furniture,' a piano was held to be exempt; and the doctrine is there announced that the exemption is not alone extended to those articles of furniture that are necessary to supply the wants of the family, but it extends to all furniture, useful or ornamental, that is used by the family."

These cases illustrate the extreme liberality of our courts in construing exemption laws, but no one of them involves the precise question submitted to this court for determination. What is wearing apparel? The circuit court of appeals for this circuit, speaking through Judge McCormick, defined it as follows:

"The phrase 'wearing apparel,' as used in exemption laws, has its popular sense, and includes all the articles of dress generally worn by persons in the calling and condition of life and in the locality of the residence of the person claiming the exemption. It includes whatever is necessary to a decent appearance, and to protection against exposure to the changes of weather, and also what is reasonably proper and customary in the way of ornament. A

96 F.—53

plain gold watch, worth not more than $50, is not usually worn habitually by farmers and country merchants as an ornament; but in this day, when everything moves on schedule time, a watch is an eminently useful, if not an absolutely necessary, article of dress. We conclude that where, as in Alabama, the exemption laws embrace the homestead of every citizen, and such personal property as he may have to the extent in value of $1,000, 'and, in addition thereto, all necessary and proper wearing apparel for himself and family,' a fair construction of this last provision will include within the meaning thereof the watch worn by the appellee. Under different statutes in other states than Alabama the decisions are conflicting." Sellers v. Bell, 36 C. C. A. 513, 94 Fed. 811, 812.

It was said by Judge Hammond, in Re Steele, 22 Fed. Cas. 1202 (No. 13,346):

"It would not be doing any great violence to the meaning of the term 'wearing apparel,' as used in the bankrupt act, to include in it a gold watch of moderate value. The definition of the word 'apparel,' as given by lexicographers, is not confined to clothing; the idea of ornamentation seems to be a rather prominent element in the word, and it is not improper to say that a man 'wears' a watch or 'wears' a cane."

And in Towns v. Pratt, 66 Am. Dec. 727, the supreme court of New Hampshire employed the following language:

"Articles of jewelry, designed to be worn upon the person as ornaments, are not wearing apparel, in the popular sense of the term. As understood in its ordinary signification, it means clothing,—garments worn to protect the person from exposure,—and not articles used for ornament merely. In its original signification, the word 'apparel' may have a more extensive meaning, including not merely vesture,—habiliments for covering the person,—but all ornaments and decorations worn with the vesture."

In Sellers v. Bell and in Re Steele a gold watch was held exempt; but in Towns v. Pratt (the statute exempting wearing apparel necessary for the debtor and his family) a breastpin was held not exempt. Reference is also made to the following authorities bearing upon the subject: Frazier v. Barnum, 19 N. J. Eq. 316; Coward v. Railroad Co., 57 Am. Rep. 226; Mack v. Parks, 69 Am. Dec. 267; Richardson v. Buswell, 43 Am. Dec. 450; note to Rockwell v. Hubbell's Adm'rs, 45 Am. Dec. 251–256; Richardson v. Hall, 124 Mass. 228; In re Cobb, 5 Fed. Cas. 1123 (No. 2,920); 29 Am. & Eng. Enc. Law, 38; Thomp. Homest. & Ex. § 786 et seq.

The difficulty of reaching a satisfactory conclusion upon the question under consideration will be fully appreciated after the foregoing authorities shall have been carefully analyzed. Without attempting to explain or reconcile conflicting judicial opinions which define wearing apparel and discuss its exemption, the court is inclined to adopt the view that an article, although ornamental, may, under some circumstances, be classified as wearing apparel, while, abstractly considered, it would not be regarded as vesture. The use to which it is applied should be considered in determining its category. If worn as a mere ornament, and intended simply for display, without serving a useful purpose, it would scarcely be regarded as exempt property on the ground that it was wearing apparel. But if it be used to complete and perfect some part of the vesture, such as a shirt, would it not, although ornamental, form a part of the shirt, and hence become wearing apparel? That a shirt is wearing apparel will be readily conceded. Buttons are

necessary to complete the garment, and when sewed to the shirt form part of it. If the buttons are thus attached to the shirt, they, like the shirt itself, become wearing apparel. Why, then, should not a detached button or shirt stud, which is bona fide and continuously used for the same purpose, be assigned to a like category? What sound reason can be urged for holding the one to be wearing apparel and the other not? Both serve precisely the same useful purpose, the only difference being that in the one case the button is attached to the shirt by thread, and in the other it remains unattached, but always ready for use. No objection can be made on the ground of value, because the statute imposes no limitation as to value; nor can it be urged that the article is not necessary or proper for the reason that the statute exempts all wearing apparel, without reference to its necessity or propriety. The statute is satisfied if the debtor has acted in good faith, and has applied the article claimed to be exempt to its proper and legitimate use as wearing apparel, and no inquiry will be made as to its value or appropriateness. Upon this point the chancellor in a New Jersey case has aptly said:

"The lace shawl is wearing apparel, and by law in this state all wearing apparel is exempt from execution. Whether the shawl is of greater value than she ought to wear in her condition in life as to property cannot be inquired into. It was bought for her use before the complainant's judgment or claim. The only inquiry which could be made is whether it is held in good faith as wearing apparel, or purchased for the purpose of putting the price beyond the reach of creditors." Frazier v. Barnum, 19 N. J. Eq. 318.

The facts of the present case disclose that the bankrupt has continuously worn the diamond stud in question for the past 11 years for the purpose of fastening his shirt front, and there is nothing in the record tending to show fraud or bad faith. The circumstances of the case, considered in connection with the Texas statute, and the liberal construction placed upon it by the courts of this state, lead to the conclusion that the diamond stud owned by the bankrupt constitutes a part of his wearing apparel, and it therefore forms no part of the estate to be distributed among his creditors. The question certified by the referee will be answered in the affirmative.